## Case No. 522.

### The ARIADNE.

#### District Court, S. D. New York.

[Cited in The City of Norwich. Case No. 11,-202. Nowhere reported; no opinion on file in clerk's office.]

---

## Case No. 523.

### The ARIADNE.

#### Circuit Court, S. D. New York. May, 1870.

[Affirming The Ariadne. Case No. 524. Reported as The Ariadne, Id. 525.]

---

## Case No. 524.

### The ARIADNE.

#### [2 Ben. 472.][1]

District Court, S. D. New York.   June, 1868.[2]

COLLISION OFF BARNEGAT— STEAMER AND BRIG— LIGHTS—SPEED—BURDEN OF PROOF.

1. Where a brig, sailing westward, at night, and keeping her course, was struck on her starboard quarter by a steamer running south by west quarter west, at the rate of about seven or eight knots an hour, the steamer having kept a good lookout, and having, as soon as the brig was seen, no light being visible, stopped and backed her engine, and having, as soon as the course of the brig was seen, put her helm hard a starboard: *Held*, that, on the evidence, the brig did not have burning such a green light as could be seen at the distance of two miles, and that this fault contributed to the collision.

[Cited in The State of Alabama, 17 Fed. 863; The City of Merida, 24 Fed. 236.]

[See note at end of case.]

2. That the burden was on the libellants, the owners of the brig, to establish that the steamer was in fault.

3. That it was not shown that the steamer could have seen the brig sooner.

[See note at end of case.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Decree affirmed by the circuit court in The Ariadne. Case No. 525, but afterwards reversed by the supreme court in 13 Wall. (80 U. S.) 475.]

4. That the speed of the steamer was not too great, as she had the right to rely on the exhibition of a light by an approaching vessel.
[See note at end of case.]

5. That the steamer was not in fault, and the libel must be dismissed.
[See note at end of case.]

[In admiralty. Libel in rem by Archibald M. Pentz and others, owners of the brig William Edwards, against the steamer Ariadne, Charles Mallory, claimant,] for a collision, which took place about 11 o'clock P. M., on the 13th of December, 1865, between the brig William Edwards and the steamer Ariadne. The brig was bound from Havre to New York. The steamer was a propeller, bound from New York to Appalachicola. The brig had taken a pilot, and was about twelve miles from Barnegat, and about eight miles off shore. The libel averred that the brig saw the steamer approaching, at a distance of three miles off; that the brig was at the time close-hauled to the wind, and had all her lights displayed; that she kept steadily on her course, but the steamer continued to approach her and struck her starboard quarter, causing her to sink and be totally lost. The damage claimed was over $60,000. The answer set up that the night was cloudy and dark; that the wind was from north to north-north-east, a strong whole-sail breeze; that the steamer had her lights properly set and burning, and a competent lookout properly stationed and vigilant; that the steamer had no sails set, and was going from seven to eight knots an hour, heading south by west quarter west, Barnegat light bearing about southwest half south; that the brig was discovered near to the steamer, a little on her port bow, no lights being visible on the brig, and heading towards the shore across the steamer's bows; that the steamer's bells were immediately rung to stop and back, and her wheel was put hard to starboard so as to make her go under the stern of the brig, but, although her engine was immediately stopped and reversed, and her helm was put hard to starboard as quickly as possible, yet, by reason of the proximity of the vessels, it was impossible to clear the brig; that the green light on the starboard side of the brig had gone out, or burned so low and dimly, or had so smoked the glass of the lantern, that it was not visible; and that the brig could not have been seen sooner that she was. [Affirmed by the circuit court in The Ariadne, Case No. 525, but on appeal to the supreme court the decree was reversed in 13 Wall. (80 U. S.) 475. See note at end of case.]

J. E. Parsons and T. Scudder, for libellants.
E. H. Owen, and C. Donohue, for claimants.

BLATCHFORD, District Judge. I think the weight of evidence is, that the brig did not have burning, at the time of the collision, such a green starboard light as the statute requires—a light capable of being seen on a dark night, with a clear atmosphere, at a distance of at least two miles. The night was dark, but not foggy, though cloudy, and the evidence is that the light of a vessel could have been seen that night two miles. No green light on the brig could be seen from the steamer, and the evidence from on board the brig, that her green light was burning at the time so as to be visible, beyond a very short distance, is very unsatisfactory. There had been trouble with both of the side lights of the brig that night, and they had required to be taken down and retrimmed. If the green light had been properly burning, it would have been seen from the steamer, at a sufficient distance to have left the brig wholly blameless, and the steamer wholly in fault, for the collision. This fault on the part of the brig undoubtedly led to the collision.

In any view, the burden is on the libellants to show that the steamer was in fault. But, as the brig did not have a green light properly burning, it is especially incumbent on them to show, that, notwithstanding such condition of their own light, the collision arose from the fault of the steamer. The libellants fail to show this. They do not show that the steamer could, with proper vigilance, have seen the brig in season to avoid her. The speed of the steamer was not too great, in view of the character of the night, there being no fog, and she having a right to rely on the exhibition of a light by an approaching vessel, for the reason that a proper light, if exhibited, could be seen at a distance sufficiently great to avoid a collision. The steamer had a lookout properly stationed, competent and attentive, and it is not made out that the brig could have been seen sooner than she was. She loomed up out of the darkness, but, because her green light could not be seen, her course could not be discerned, and the evidence is, that the steamer was promptly slowed and stopped and backed, and, that when the master of the steamer, by the aid of his night glass, made out the course of the brig, the helm of the steamer was put to starboard, which turned her head to the eastward, and was a proper manoeuvre, as the brig was headed to the westward. The libel must be dismissed, with costs.

[NOTE. This decree was affirmed by the circuit court in The Ariadne, Case No. 525, but on appeal to the supreme court it was reversed, with directions that a decree be entered dividing the damages between the steamer and the brig, although the finding of the court below that the brig was at fault in not having her starboard light burning, or burning so as to be visible more than a short distance, was held to be fully sustained by the evidence. Mr. Justice Swayne, speaking for the court, said: "The steamer was about two hundred yards long. * * * When running at her then speed, she could easily be stopped in a space of about twice her length. She approached the brig in the direction most favorable for her lookout to see the hull and sails of the latter. According

to the steamer's testimony, a vessel without a light could be seen the eighth of a mile. Her testimony also shows the following facts: She had but one lookout. The second mate saw the brig first. He asked the lookout if he saw her. The lookout thereupon turned, and saw her. He had not seen her before. He saw no light, and could not tell which way she was heading." (The steamer's engine was stopped and backed as soon as the brig was discovered.) "The lookout says the steamer ran about a length between the time when he first saw the brig and the time when the steamer struck her. * * * For all the purposes of this case, there might as well have been no lookout on the steamer. He could have rendered, and it was his duty to render, a service of vital importance, but he rendered none. * * * We think the conduct of the lookout was marked by gross carelessness, and that it was clearly one of the concurring causes of the disaster." The Ariadne, 13 Wall. (80 U. S.) 475.]